# Dorris's Estate.

*Will—Executors and administrators—Allowance for household expenses —Discretion of orphans' court.*

Where a testator directs an allowance out of income for household expenses of his family, an allowance of a certain amount made by the orphans' court in the excercise of its discretionary power will not be reversed where it appears that the allowance was made after depositions had been taken, and that the evidence tended to show that the household consisted of the same persons as those who lived with the testator in his lifetime, that the amount allowed was less than that spent by the testator, that the widow was an invalid and required a nurse, that the amount was less than the total income of the estate, and was a fair one under all the circumstances.

Argued Nov. 2, 1908. Appeal, No. 167, Jan. T., 1908, by John D. Dorris, Executor, from decree of O. C. Huntingdon Co., making allowance for household expenses in Estate of William Dorris, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Petition for allowance for household expenses. Before SHULL, P. J., specially presiding.

The court entered a decree directing that the executors pay from the estate the sum of $3,000 on account of household expenses incurred from January 1, 1907, to January 1, 1908, and for a like purpose the sum of $1,500 on July 1, 1908; and further, the sum of $300 upon July 30, 1908, and monthly thereafter, up to and including December 30, 1908. After the completion of said period either party may make application to the court to diminish, increase or continue, the award for future household expenses.

*Error assigned* was decree of the court.

*W. M. Henderson,* with him *Lyman D. Gilbert,* for appellant.

*H. H. Waite,* with him *Wm. Wallace Chisolm,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 4, 1909:

Julia M. Dorris, widow of William Dorris, filed a petition in the orphans' court of Huntingdon county, representing that William Dorris, died September 2, 1904, leaving to survive him a widow, the petitioner, and five children; three of the children resided with him at the time of his death and continued thereafter to reside with his widow in the family residence; that by his will William Dorris provided as follows: "I hereby direct my executors shall retain from the income of my estate a sum sufficient to pay household expenses, taxes, repairs, etc., during the life of my wife, and the residue to be distributed monthly or quarterly as my heirs may desire,—one-third to my wife during her life; one-tenth to my son William W. Dorris during his life, and the residue to be paid in equal portions to my son John D. Dorris and to each of my daughters, Anne, Julia and Mary, intermarried with C. Herbert Miller, and their, and each of their heirs and assigns;" that since the death of William Dorris the petitioner had made demand upon his executors for $4,000 per annum for the purposes designated in the clause quoted; but that they had failed to pay the sum demanded or fix any sum as allowance to the petitioner for such purposes; that she ought to be allowed $4,000 annually out of the income of the estate under paragraph four of her husband's will, the current household expenses, taxes, repairs, etc., amounting annually to more than that sum; and that the income of the estate was sufficient to justify the payment of that amount to her annually. Petitioner therefore prayed the court to fix the amount of her allowance at $4,000 a year.

John D. Dorris, one of the executors, filed an answer alleging that the income of the estate was not sufficient to pay the petitioner the sum of $4,000 annually, and averring that the sum of $2,000 would, under the circumstances, be a liberal allowance, for the household expenses of the petitioner. Depositions were taken, and upon the hearing, the court below found that the testimony in behalf of the petitioner tended to show "that the household is comprised of the same members that were supported and maintained by decedent in his lifetime; that Julia M. Dorris, the widow, is an invalid, requiring con-

stantly the services of a nurse and frequent attendance of a physician. That for the year December 5, 1906, to December 5, 1907, there had been expended for household and current expenses sums aggregating $3,300; which did not include clothing, nursing and medical bills, and that the sum expended generally upon the household was less than the amount expended for the maintenance of the household during the lifetime of the testator." As a conclusion following upon the facts found, the court made a temporary order that the executors should pay to Julia M. Dorris, widow, the sum of $3,000 on account of household expenses incurred during the year 1907, and at the same rate, during the first six months of 1908, and the sum of $300 per month during the remainder of the year 1908, after which period, either party was authorized to apply to the court for a change in the amount of the allowance. John D. Dorris, one of the executors, has appealed from the order upon the ground that the income of the estate was not sufficient for the payment of the amounts awarded.

We are satisfied that the court below was right in holding that the testator in his will considered the royalties upon his coal lands as income. In fact the correctness of this view is not questioned. It is also clear that the court did not intend its order to go beyond the limits of the income. This appears from the opinion in which it is said, "The will does not contemplate fixing a charge by the executors upon any of testator's property. It is true that the widow is the primary object of the testator's bounty, but this bounty must come from the source designated by the testator, that is, 'from the income of my estate,' and having elected to take under the will, she cannot take against it to the detriment or impoverishing of the corpus. . . . At this stage of the case without an account presented showing the status of the estate since the judgment of $12,500 was obtained, [it] leaves us without a proper compass to ascertain our bearing or knowledge of the port to which we must sail in search of safety."

It will be remembered that the order was temporary, being intended only to bridge over present difficulties, and provide for the needs of the widow during the two years mentioned.

The testimony as to the precise amount of available income, did not make the situation clear to the court below, and we certainly have no further light upon that subject. The question to be determined was one resting largely in the sound discretion of the orphans' court, and we have not been convinced that there was any abuse of that discretion. It appears from the evidence that the estate recovered against the Morrisdale Coal Company, a judgment for $12,500, of which the appellee claims that at least two-thirds, or over $8,000, was for royalties accruing after the death of testator, and therefore to be considered as income. This was to be paid in monthly payments of $500 each, for which notes were to be given. In addition, under a new lease of a portion of the coal lands, a minimum annual royalty of $3,200 was to be paid. The aggregate amount allowed to the widow under the order of the court below was $6,300 for the two years, and this was apparently well within the amount of the income accruing during that time. It is urged upon the other hand, that under the settlement made with the widow by the estate, all the money received from the coal company, less expenses, and also one-fourth of the future coal royalties, were to be applied in liquidation of the judgment of the widow against the estate. But it was expressly stipulated in the agreement that any question of the amount of household expenses to which Mrs. Dorris might be entitled under the will, was to be excluded from the settlement. It would seem, therefore, under a fair construction of the agreement, that she should receive such sum as the court might find necessary to meet the household expenses, before making any application of the amounts received from the coal royalties to the judgment under the terms of the agreement. But at any rate, we do not feel that there is anything in this record which would justify us in altering in any way the order and decree of the court below. Under its terms, the way is open for change in the amount awarded for household expenses, whenever the need can be shown, in an application to the orphans' court.

The assignments of error are overruled, and the decree of the court below is affirmed.